**Mark Soto PEREZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–91–383–CR.**

Court of Appeals of Texas,
Corpus Christi.

April 23, 1992.

---

**2.** It is unnecessary to address Goudeau's remaining four points of error, and we decline to do so.

Stephen S. Ross, Victoria, for appellant.

George J. Filley, III, Dist. Atty., Keith S. Weiser, Asst. Dist. Atty., Victoria, for appellee.

Before NYE, C.J., and FEDERICO G. HINOJOSA, Jr. and GILBERTO HINOJOSA, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

A jury found appellant guilty of murder and assessed his punishment at life in prison and a fine of $10,000. By four points of error, appellant complains that the trial court erred in denying his motion for new trial because the jury was probably exposed to prejudicial newspaper coverage, in overruling objections to the prosecutor's inquiries into the identity of gang members and into appellant's gang involvement, and in overruling objections to the introduction

of extraneous offenses during the punishment phase. We disagree and affirm the judgment of the trial court.

On the evening of November 30, 1990, appellant, age 17, and his friend John Garcia, age 18, were at a house in Victoria socializing with other young people. Johnny Rodriguez, age 19, was also at the house. Appellant and Garcia were members of a group called the Queen City Cholos and did not like Rodriguez, who was not a member. Shortly after midnight, Rodriguez left the house and began walking down the street. Appellant and Garcia followed and caught up to Rodriguez. Garcia told Rodriguez to get off his "turf," and Rodriguez answered that Garcia would have to make him leave. This exchange of words led to a fight in which Garcia beat Rodriguez with a chain, and appellant beat Rodriguez with his fists and stabbed him with a knife. The medical examiner testified that Rodriguez died from forty-two stab and cut wounds.

At trial, several persons testified that they had witnessed the fight. Appellant did not testify, but he presented evidence to show that Rodriguez attacked him and that he became enraged. The trial court instructed the jury on voluntary manslaughter, but the jury rejected this theory and found appellant guilty of murder.

In his first point of error, appellant contends that the trial court erred when it refused to ask the jurors if they saw an article concerning the trial that appeared in the *Victoria Advocate*. The article appeared during the guilt-innocence phase of the trial and showed a photograph of appellant being escorted in handcuffs. A story next to the picture carried a headline reading, "Stabbing death may have been over gang turf." At trial, appellant's counsel moved for a mistrial and then stated that "maybe" the trial court should question the jurors about whether they had seen the article. Appellant alleged that because the *Victoria Advocate* was the only local newspaper, the jury "could not help being exposed" to the article. The trial court denied the motion for mistrial and did not question the jurors.

On appeal, in support of his position, appellant cites *Henley v. State*, 576 S.W.2d 66, 71–72 (Tex.Crim.App.1978), and *Penn v. State*, 628 S.W.2d 179, 180 (Tex.App.—Corpus Christi 1982, pet. ref'd). In *Penn*, the trial court required the defendant to wear leg irons in the jury's presence throughout the trial. This Court held that the trial court had failed to justify the use of such extraordinary restraint in the jury's presence. In *Henley*, a change of venue case, the Court held that the area from which a jury is to be drawn is one factor in assessing whether the community had an opinion of a defendant's guilt. Appellant combines the rationale of these two cases and argues that because Victoria is a relatively small city, the jurors must have seen the newspaper article showing appellant in handcuffs and, therefore, he was prejudiced. We disagree.

The jury was instructed at the beginning of the trial not to read any newspaper article or to listen to any radio or television broadcast about the case. Appellant did not present any evidence that any juror had seen the article or had violated the trial court's instructions to avoid media coverage of the case.

In the absence of any evidence showing that a juror read or knew about the newspaper article, nothing is presented for review. *Bowling v. State*, 438 S.W.2d 930, 933 (Tex.Crim.App.1969); *see Haas v. State*, 498 S.W.2d 206 (Tex.Crim.App.1973). *Houston v. State*, 496 S.W.2d 94 (Tex.Crim. App.1973). Appellant cites no authority which would have required the trial court to ask the jurors during trial whether they had seen the article. Appellant's first point is overruled.

In his second and third points of error, appellant complains that the trial court erred in admitting evidence of the activity and identity of different members of the Queen City Cholos, over objections of prejudicial effect and lack of relevance.

A trial court's decision to admit evidence over a timely lack of relevancy objection is reviewed by an appellate court under an abuse of discretion standard. *Mont-*

*gomery v. State,* 810 S.W.2d 372, 391 (Tex. Crim.App.1990) (Opinion on Rehearing). When the appellate court can say with confidence that by no reasonable perception of common experience can it be concluded that proffered evidence has a tendency to make the existence of a fact of consequence more or less probable than it would otherwise be, then it can determine that the trial court abused its discretion by admitting the evidence. *Id.* If the appellate court determines the trial court erred in admitting the evidence, it then proceeds to determine harmfulness. *Id;* TEX.R.APP.P. 81(b)(2).

■ A trial court's decision to admit relevant evidence over a timely objection of unfair prejudice is also reviewed under an abuse of discretion standard. *Id.* Relevant evidence is admissible unless the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Crank v. State,* 761 S.W.2d 328, 342, n. 5 (Tex.Crim.App.1988); TEX.R.CRIM.EVID. 403. The opponent of the evidence, in view of the presumption of admissibility of relevant evidence, must object to the evidence on the ground that the evidence's probative value is substantially outweighed by the danger of unfair prejudice. *Montgomery,* 810 S.W.2d at 389. Once a party invokes this rule, the trial court has no discretion in choosing whether or not to engage in the balancing process. *Id.*

■ Relevant evidence is any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX.R.CRIM.EVID. 401. This does not mean that the fact must be in dispute; rather, the fact must only have something to do with the ultimate determination of guilt or innocence in the case. *Mayes v. State,* 816 S.W.2d 79, 84 (Tex. Crim.App.1991).

■ In point two, appellant contends that the trial court erred in allowing the State to ask Joe Tejeda if certain persons belonged to the Cholos. Tejeda testified that a group of his friends hung around Queen City Park and called themselves the Queen City Cholos. Tejeda testified, without objection, that appellant, John Garcia, Johnny Tejeda, and John Benitez were members of the Cholos. When the prosecutor asked him if the Emiliano brothers were members, Tejeda said they were not. The prosecutor then asked Tejeda if Paul Fuentes was a member. At the bench, appellant objected to this question, stating that the identity of the other gang members was irrelevant and prejudicial, arguing that the prosecutor was going through a list of "notorious persons, people that are in the paper recently that have nothing to do with this case." Appellant argued that the State was trying "to associate [him] with the Fuentes boy who's on trial for murder in the Emiliano case." The trial court overruled the objection, and Tejeda testified that Fuentes was a member of the Cholos. Tejeda further testified that Johnny Rodriguez, the victim, was not a member of the Cholos.

The State, in response to appellant's point of error, claims that appellant's association with the Cholos was not inquired into but rather it was the victim's non-association that was elicited. The record shows, however, that the prosecutor did question Tejeda about the group's membership and elicited that appellant was a member. Thus, we find the record contrary to the State's position, and we turn to the merits of appellant's point.

In support of his position, appellant cites *Koller v. State,* 518 S.W.2d 373, 377 (Tex. Crim.App.1975). In *Koller,* the State elicited testimony that the defendant came to the courthouse with a prostitute. The Court of Criminal Appeals held that it was error for the prosecutor to prejudice the defendant by using the character of his associates.

In the present case, appellant contends that the State was trying to prejudice him by showing that he associated with persons charged with other crimes. We agree that the evidence is not relevant to any material issue of fact. While the gang-related activities themselves might possibly show a motive for killing, the actual identity of the gang members, aside from persons in-

volved in the facts of this case, is irrelevant. The trial court committed error when it admitted evidence of the identity of members of the Cholos after appellant objected. We must now determine whether such error was harmful. *Montgomery*, 810 S.W.2d at 391; TEX.R.APP.P. 81(b)(2).

After reviewing the record, we are unable to conclude that appellant suffered any harm from the preserved error primarily because appellant did not object until Tejeda was asked if Paul Fuentes was a member of the Cholos. Aside from Tejeda's testimony that members of the Cholos had to fight everybody to be initiated into the group, testimony that is the subject of the third point of error, there is no testimony to the character or activities of Paul Fuentes. Appellant did not introduce any evidence outside the presence of the jury to show that this person was of bad character or that any juror would have known this person.

 Facts not introduced into evidence are not before us for review. *Mayo v. State*, 314 S.W.2d 834, 839 (Tex.Crim.App. 1957). We cannot accept as true appellant's counsel's statement contained within his objection that Paul Fuentes was a notorious criminal whose name alone would have prejudiced appellant. A statement by counsel, standing alone, may not be taken as evidence of such a claim. *See Wingate v. State*, 487 S.W.2d 89, 92–93 (Tex.Crim. App.1972). Appellant's second point of error is overruled.

 In his third point of error, appellant contends that the trial court erred in allowing the State to ask questions about the activities of the Queen City Cholos. At trial, the State defended the testimony on the grounds that it was relevant to the events leading up to the killing. On appeal, the State defends the trial court's action on the grounds that appellant only offered a general objection which is insufficient to preserve error.

Appellant objected when the prosecutor asked Joe Tejeda, "What did you have to do to become a Cholo?" Tejeda responded, after the trial court overruled the objection, "You had to fight to get in." When asked who an initiate had to fight, Tejeda answered, "Everybody." Tejeda subsequently testified that "everybody" only meant other gang members.

From the evidence elicited by the question and the State's rationale for offering such evidence, we can only conclude that appellant, as a member of the Queen City Cholos, showed a propensity for violence and that this character trait made it more probable that he would commit murder. While this would clearly constitute an impermissible use of character evidence under TEX.R.CRIM.EVID. 404(a), appellant did not object on that ground. The trial court overruled the objection, finding the evidence relevant.[1] Appellant waived any argument that the evidence was inadmissible on other grounds by failing to enter a proper objection or to demonstrate that the prejudicial effect substantially outweighed the probative value. Appellant's third point is overruled.

 In his fourth point, appellant contends that the trial court erred in permitting Sergeant John Burney to testify at the punishment phase of the trial about appellant's involvement in a convenience store robbery and homicide. *See* TEX.CODE CRIM. PROC.ANN. art. 37.07 § 3 (Vernon Supp. 1992); *Grunsfeld v. State*, 813 S.W.2d 158 (Tex.App.—Dallas 1991, pet. granted). After reviewing the record, we find that appellant has failed to preserve this complaint for appellate review.

During the State's case-in-chief at the punishment phase, the prosecutor asked Sergeant Burney if he had investigated a robbery and homicide which occurred at a Circle K store in February, 1990. Burney testified that he had. The prosecutor then asked Burney if he was able to determine whether appellant was "involved in any way in the robbery itself." Before appellant objected, Burney testified that he had

---

**1.** Character conformity evidence may be "relevant" as that term is defined by Rule 401, which requires the rules to carve special exceptions for character conformity evidence under Rule 404. *See Gilbert v. State*, 808 S.W.2d 467, 471 n. 4 (Tex.Crim.App.1991).

been able to make that determination. Appellant then objected to the question, arguing that appellant had not been convicted of anything and that it was terrible for Burney to cast aspersions. The trial court overruled the objection.

Burney then testified, without objection, that he had questioned appellant about the robbery. Initially, appellant denied involvement. At some point, Burney determined that appellant had provided a disguise to one of the actors in the robbery and that appellant knew the purpose of giving the disguise. Burney then testified that appellant had not been charged in the case, but that throughout the investigation, appellant had told him a number of lies.

 Throughout all of Burney's testimony, appellant only objected to the question concerning whether Burney had been able to determine whether appellant was involved in the incident. Texas law requires a party to continue to object each time inadmissible evidence is offered. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex.Crim.App.1991). Error in the admission of evidence is cured when the same evidence is admitted elsewhere without objection. *Id.* To preserve error, appellant could have requested a running objection or objected, outside the presence of the jury, to all the testimony he deemed objectionable. *Id.* at 858–59. Appellant did neither. By not properly objecting, appellant waived any error relating to the admission of evidence concerning the unadjudicated extraneous offense. Appellant's fourth point of error is overruled.

The judgment of the trial court is affirmed.